IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID CZAPIEWSKI,                                                                  OPINION and ORDER

        Plaintiff,                                                                                   15-cv-208-bbc

     v.

TODD RUSSELL, JOHN O'DONOVAN,
WILLIAM POLLARD and ANTHONY MELI,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff David Czapiewski, a prisoner at the Wisconsin Resource Center, contends that defendants Todd Russell, John O'Donovan, William Pollard and Anthony Meli violated his First and Fourteenth Amendment rights by disciplining him for expressing suicidal thoughts. Plaintiff also contends that defendant Russell was deliberately indifferent to his mental illness and propensity for self harm, in violation of the Eighth Amendment.

      Defendants have filed a motion for summary judgment, which I am granting. Plaintiff's First and Fourteenth Amendment claims fail because it was reasonable for defendants to believe that plaintiff was lying about his intention to commit suicide in order to obtain special treatment. A government agent does not violate the First Amendment when his allegedly retaliatory action is motivated by a reasonable belief that the plaintiff engaged in a speech act that is not constitutionally protected. As for plaintiff's Eighth Amendment claim, this claim fails because defendant Russell's responses to plaintiff's

1

complaints that he was suffering from suicidal ideation were reasonable and appropriate under the circumstances.

Plaintiff has also filed a motion to strike expert witness testimony submitted by defendants on the ground that defendants did not timely disclose this expert in accordance with Fed. R. Civ. P. 26(a)(2). I am denying this motion because under Fed. R. Civ. P. 5(b)(C), service was complete on February 29, 2016, the date defendants placed the disclosures in the mail, not March 2, 2016, the date plaintiff alleges he received the disclosures.

Finally, I am denying plaintiff's motion to re-submit proposed findings of fact and responses to defendants' proposed findings of fact. As an initial matter, plaintiff has not provided the court a copy of the "second chance" filing he wants to submit and his motion does not identify the issues this new set of facts would address. The court cannot determine whether a "second chance" is warranted without knowing what deficiencies in his initial submission plaintiff hopes to address. Moreover, allowing plaintiff to file an entirely new set of proposed facts and responses after briefing is complete would be prejudicial and unfair to defendants, who would be required to re-submit their own responses and replies to plaintiff's facts.

From the parties' summary judgment materials and the record, I find that the following facts are not subject to genuine dispute.

UNDISPUTED FACTS

A. <u>December 14, 2011 Incident</u>

On December 14, 2011, plaintiff was being housed in the A-wing of the Waupun Correctional Institution's Restrictive Housing Unit, which is where inmates are assigned if they violate prison rules or pose a security risk to the prison. At approximately 9:07 p.m., plaintiff pressed the emergency call button in his cell. At that time, defendant Russell was working in the Restrictive Housing Unit's control center and answered plaintiff's emergency call via the control center's intercom system. Plaintiff told defendant Russell that he was having suicidal thoughts and that he intended to break his own neck by jumping off the sink in his cell. Russell immediately contacted the shift sergeant assigned to the Restrictive Housing Unit, Sergeant Eric Billington, and explained the situation.

When Billington arrived at plaintiff's cell, plaintiff complained that prison officials were not picking up his outgoing mail. Plaintiff told Billington that so long as his mail was picked up, he would not harm himself. Billington agreed to make sure that plaintiff's mail was picked up going forward. However, after meeting with plaintiff and assessing the situation, Billington concluded that plaintiff was only threatening self-harm so that a prison official would be dispatched to plaintiff's cell, thereby providing plaintiff an opportunity to complain about the problems he was having with his mail. When Billington returned to the control center, he told defendant Russell that he did not believe plaintiff was a threat to himself and that plaintiff simply wanted to complain to a prison official about his mail.

The following day, on December 15, 2011, defendant Russell issued plaintiff Conduct

Report #2238552. The conduct report stated that plaintiff violated Wis. Admin. Code DOC 303.24 ("Disobeying Orders"), 303.27 ("Lying"), 303.28 ("Disruptive Conduct") and 303.63 ("Violations of Institution Policies and Procedures") by misusing the emergency intercom system and making empty threats of self-harm so that plaintiff could complain about his mail and have it picked up on an expedited basis. Defendant Anthony Meli, in his capacity as the security director designee, completed the Security Director Review of the conduct report on December 16, 2011. Defendant Meli determined that plaintiff's conduct created a risk of serious disruption at the institution because the misuse of the emergency call button and plaintiff's lying about his suicidal ideation interfered with the Restrictive Housing Unit staff's ability to quickly respond to legitimate, urgent situations. Meli decided that the conduct report's allegations justified a "Major Disciplinary Hearing." After approving the conduct report and setting it for a hearing, defendant Meli did not have any further involvement in the claims at issue.

The disciplinary hearing on Conduct Report #2338552 was held on December 29, 2011. Plaintiff submitted a statement that he was suicidal at the time he used the emergency call button, but that he had "changed his mind" after Billington spoke with him and told him that he would deliver plaintiff's outgoing mail. Defendant John O'Donovan considered plaintiff's statement along with defendant Russell's allegations set forth in the conduct report. O'Donovan also considered the information provided by plaintiff's advocate, Annette Miller. Ultimately, O'Donovan decided that plaintiff was guilty of having violated Rule 303.27 ("Lying") and 303.63 ("Violations of Institution Policies and

4

Procedures") and imposed 60 days of disciplinary separation.

Plaintiff was given a copy of O'Donovan's decision as well as information regarding his right to file an administrative appeal. Plaintiff appealed O'Donovan's decision to defendant Warden William Pollard on January 24, 2012. Defendant Pollard reviewed the records related to plaintiff's conduct report and affirmed O'Donovan's decision. Specifically, Pollard found that it was more likely than not that plaintiff had violated institution policies and procedures because he improperly used the emergency call button to have his mail retrieved. However, defendant Pollard reduced plaintiff's time in segregation from 60 days to 30 days.

B. April 21, 2012 Incident

On April 21, 2012, plaintiff was housed in the Restrictive Housing Unit. At 4:20 p.m. plaintiff used the emergency call button in his cell to contact the unit's control center. Again, defendant Russell answered plaintiff's call. Plaintiff told Russell via the emergency intercom system that he was "going to kill [him]self" and he "want[ed] to see the sergeant." From the control center, Russell was able to see two prison officers, Officer Moungey and Officer Grahl, immediately outside plaintiff's cell. Russell instructed plaintiff to speak with Officers Moungey and Grahl, which he did. However, at some point during their conversation, plaintiff grew agitated, began making suicidal threats and started banging his head against his cell door. Moungey and Grahl radioed Sergeant Billington and asked him to "respond immediately" to plaintiff's cell.

When Billington arrived at plaintiff's cell, plaintiff was unwilling to talk; he simply yelled that he was going to kill himself and demanded that he be allowed to speak with a lieutenant or a captain. Plaintiff refused to leave his cell so that he could receive medical attention. Billington contacted a supervisor, Lieutenant Schneider. Schneider responded to plaintiff's cell and was able to remove plaintiff without a forced cell entry. Schneider contacted the prison's Psychology Services Unit and the Health Services Unit and placed plaintiff on clinical observation status. The prison nurse treated plaintiff for a laceration he suffered while banging his head on the cell door.

OPINION

A.  Plaintiff's First Amendment Claim

First, plaintiff contends that his First Amendment rights were violated because he was punished for alerting defendants to the fact that he was suicidal and intended to harm himself. Defendant contends that plaintiff was not punished for alerting prison officials to his suicidal ideation; instead, he was punished for using the threat of suicide to manipulate prison officials into picking up his outgoing mail.

Prisoner complaints about medical issues, including mental health problems such as suicidal ideation, are protected by the First Amendment. Gomez v. Randle, 680 F.3d 859, 866-67 (7th Cir. 2012) (First Amendment protects prisoner's right to complain about medical problems and lack of treatment). However, these protections extend only to truthful complaints; lies and falsehoods do not constitute protected speech. Hasan v. U.S.

6

Department of Labor, 400 F.3d 1001, 1005 (7th Cir. 2005) ("[Plaintiff's] claim fails, however, because the defendants presented uncontradicted evidence that they punished him not because he tried to exercise free speech but because his accusation was a lie; and if as we must assume this was their true motive, there was no retaliation."); Simpson v. Nickel, 450 F.3d 303, 306 (7th Cir. 2006) ("Defendants contend (and the prison disciplinary board found) that Simpson's accusations [against prison guards] were false and malicious. . . . If defendants are correct, then they have not violated [plaintiff's] rights—and this suit is itself frivolous[.]"). Prison officials do not violate a prisoner's rights when they discipline him for filing false grievances or malingering medical conditions in an effort to obtain special treatment. Fitzgerald v. Greer, No. 07-C-61-C, 2007 WL 5497185, at *2 (W.D. Wis. Oct. 3, 2007) ("[L]ying about one's medical status is not protected by the First Amendment.").

Plaintiff argues that he was not lying and that he really did intend to commit suicide. However, plaintiff's subjective contention that he was not lying is not dispositive. Instead, the important inquiry is whether defendants reasonably believed plaintiff was lying. As the Supreme Court has stated, in analyzing First Amendment retaliation claims, it is the defendant's motive, "and in particular the facts as the [defendant] reasonably understood them," that matter. Heffernan v. City of Paterson, N.J., 136 S. Ct. 1412, 1418 (2016) (citing Waters v. Churchill, 511 U.S. 661 (1994)); Weicherding v. Riegel, 160 F.3d 1139, 1143 (7th Cir. 1998). In other words, plaintiff cannot establish that defendants violated the First Amendment if defendants reasonably believed that plaintiff's speech was not protected. Heffernan, 136 S. Ct. at 1412.

7

After reviewing the record, I conclude that no jury could find it unreasonable for defendants to believe that plaintiff was lying. Plaintiff does not dispute that when Billington arrived at plaintiff's cell plaintiff denied any intention to harm himself so long as Billington agreed to pick up his mail. Billington reasonably concluded that plaintiff did not intend to harm himself and that he was manipulating the guards so that he could complain about his mail problems on an expedited basis. Billington relayed this sequence of events to defendant Russell, who reasonably relied on Billington's account and issued plaintiff a conduct report. The reliance of defendants Meli, O'Donovan and Pollard on the allegations in the conduct report was similarly reasonable. Accordingly, plaintiff's First Amendment retaliation claim fails.

### B.  Plaintiff's Fourteenth Amendment Substantive Due Process Claim

Plaintiff also contends that defendants violated his substantive due process rights by punishing him for complaining about the fact that he was going to harm himself. However, prison disciplinary charges violate a prisoner's substantive due process rights only if the charges are fabricated or the prison officials exercise their disciplinary authority in an entirely arbitrary manner. Leslie v. Doyle, 125 F.3d 1132, 1136 (7th Cir. 1997) ("Perhaps a useful approach is to say that a frame-up or malicious prosecution is in and of itself an inchoate breach of substantive due process, which matures into a viable claim if the consequences are sufficiently severe."). As discussed above, there was sufficient evidence to support defendants' decision to issue plaintiff a conduct report and discipline him for

8

violating prison rules. Accordingly, plaintiff's substantive due process claim also fails.

### C. Plaintiff's Eighth Amendment Claim

Finally, plaintiff contends that defendant Russell violated plaintiff's Eighth Amendment rights by exhibiting deliberate indifference to the risk that plaintiff might harm himself or attempt suicide. Plaintiff contends that defendant Russell knew plaintiff was suicidal or likely to engage in self-harm and consciously refused to take reasonable steps to abate such harm. I disagree with plaintiff and conclude that defendant Russell is entitled to summary judgment in his favor on this claim.

In order to state a claim that a prison official was deliberately indifferent to a risk of suicide in violation of the Eighth Amendment, plaintiff must show that the defendant: (1) "subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarding the risk." Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006). Although plaintiff has set forth sufficient facts to support a finding in his favor on the first element, no reasonable jury could conclude from the record before the court that defendant Russell intentionally disregarded the risk that plaintiff might harm himself. With respect to both the December 14 incident and the April 21 incident, Russell responded promptly to plaintiff's emergency calls. During the December 14 incident, defendant Russell immediately radioed a supervising officer, defendant O'Donovan, after plaintiff stated that he intended to hurt himself by jumping off the sink in his cell. During the April 21 incident, Russell directed plaintiff to seek assistance from Officers Moungey and Grahl, who were

immediately outside plaintiff's cell; in turn, these officers relayed the issue to their supervisors. No reasonable jury could find that Russell's response in either instance was reckless. Id. at 762 (affirming summary judgment on ground that "there is no evidence from which a jury could infer that [defendant] recklessly or intentionally disregarded a known risk of suicide" when defendant "informed the control room that [plaintiff] had requested the assistance of a crisis counselor and was 'feeling suicidal'"). Defendant Russell acted reasonably in referring plaintiff's medical complaints to his supervisor, Billington, in the December 14 instance, and the nearest officers in the April 21 instance. Accordingly, Russell is entitled to summary judgment on plaintiff's Eighth Amendment claim.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Todd Russell, John O'Donovan, William Pollard and Anthony Meli, dkt. #40, is GRANTED.

2. Plaintiff David Czapiewski's motion to strike defendants' expert witness disclosures, dkt. #39, and his motion for leave to file a revised statement of facts, dkt. #69, are DENIED.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 18th day of July, 2016.

                                      BY THE COURT:
                                      /s/
                                      BARBARA B. CRABB
                                      District Judge